This morning is number 06-1228 In Re Masters Mr. Miller, and you've reserved five minutes for rebuttal, is that correct? Yes, Your Honor. Go ahead whenever you're ready. Thank you, Your Honor. May it please the Court. The decisions of the Board should be reversed because they are predicated upon claim constructions that are inconsistent with the text of the patent applications and inconsistent with the understanding of the skilled artisan. In both of the decisions, the Board construed texture to include a smooth surface, which is contrary to the specification. In the method case, finding no definition in the specification to determine parting, the Board adopted a dictionary definition. Your Honor, let me ask you, where did they actually say texture was a smooth surface? This is in both opinions. This is a consolidated case. On page A-17 at lines 3 to 5 at the end, thus the broadest reasonable interpretation of texture would include smooth as well as non-smooth finishes. Why is that wrong? Everything has a texture, doesn't it? A piece of glass has a texture, albeit it's very smooth, whereas a piece of sandpaper has a different texture. It's rough. Yes, Your Honor. I guess what I'm saying is, doesn't any surface present a texture of some kind? Yes, Your Honor. Yes, it does. But someone skilled in this art, someone skilled in the art of designing and manufacturing hearing instruments, would not conclude, after reading the patent applications in their entirety, that texture in this context, in the claims as used in the patent applications, would include a smooth surface. What if you just said, having imparted a textured surface to a hearing instrument, wouldn't that have cleared it up? The textured surface would not be smooth, but every surface has texture, right? What makes a person skilled in the art of the word texture and read it as textured? Textured? Yes. Textured would seem to clear it up. You wouldn't think of a smooth surface as one being textured, would you? We didn't propose that particular language. It might, but my suspicion is the patent office would have rejected it as well. I'm just thinking in terms of what a person skilled in the art would have thought. The purpose of the invention is to prevent the hearing instrument from slipping out of the ear. And if it's smooth, then it's going to fall out. So the inventors came up with this idea of making a surface that's non-smooth, and that's explained right at the very beginning of both patent applications. Both patent applications, of course, have the same text. Well, it could still be smooth and be large enough in the hearing canal and be pressure. That's right, but that would be an interference fit, and that would not. . . I'm sorry. It would still be textured, though, wouldn't it? Even though it's smooth? No, Your Honor, not in the context of this patent application. It cannot be smooth because it defeats the purpose of the invention. A smooth texture would not be covered. . . Oh, excuse me. In the case where you said it's larger than the ear canal, there's no . . . No, I'm sorry. I can't agree with that because the smooth surface is disclaimed in these patent applications. To say that it would stay in place, I would agree with that. Am I answering your question? Well, that's the reason why you're saying it has to be textured so it would not fall out of the ear. That's right, because it's not an interference fit. It barely makes contact, but enough contact to stay in place. It's a sensitive area, and people skilled in the art are concerned about making something that's going to hurt the wearer. So there's a trade-off there. Well, let me ask you, though, Mr. Miller, the prior art here, I guess we're talking about . . . Well, it was Widmer I and Widmer II and Perkins and Yost. Yes. Didn't they all, and you'll correct me if I'm wrong, but didn't they all present some kind of a texture? In other words, some kind of a non-smooth surface? Yes, Your Honor. As the claims were construed by the Patent Office, reading texture as the Patent Office proposed, they did. But no, even don't they have . . . well, how do you . . . I mean, they're not totally smooth, are they? No, they're not, but Perkins is a piece that sits in the outer ear. It's a decorative piece to cover the hearing instrument. It's not in the ear canal. Is that the one that has the mesh kind of covering? Yes, Your Honor. That's Perkins, okay. That's Perkins. And Yost has . . . The round, cushiony sort of piece. That's correct. But there's no discussion or any teaching within the applicant's patent applications for adding something to the surface. It's a modification of the hearing instrument shell itself. And as to Widmer, those are reinforcing groups. And by and large, Widmer speaks of an internal structure. But there are, of course, at least one figure, I think it's figure 18 if my memory serves me correctly, which shows an external rib. And the question becomes whether someone skilled in the art reading the patent application would contemplate adding such ribs. This is at A9 . . . Yeah, that's what I'm saying. I mean, that certainly presents what I guess anyone would think of as a textured surface. The one at A9-64? Yes, Your Honor. Yes. That's correct. That's the outside of the hearing instrument. But the reason for the appeal is to ask first for proper claim construction and then applying the art. Not to look at the art and say, well, we could construe the claim that way. But start with the patent applications, reading them in their entirety, determining what the words in the claims mean, and then moving to the art. The other term, I believe, I didn't finish this, but in the method case, there was no definition. The Board found no definition for the term imparting. And the Board instead adopted a dictionary definition, despite consistent use of that term throughout the specification. The Board also construed hearing instrument as including any device assisting hearing, contrary to its use throughout the specification and as that term is used by those skilled in the art. The applicants would like to resume prosecution of the applications, but under the present circumstances, given the current construction, no amendment would yield meaningful coverage. Although three rejections have been acknowledged by the directors not being defended, that doesn't render them moot. It doesn't remove those rejections from the record, nor does it incur the improper claim construction. The applicants ask that the Court reverse and vacate the Board decisions and remand the applications to the Patent Office so that the examiners can revisit claim construction. We also ask that this Court instruct the Patent Office to construe the claims from the perspective of the person skilled in the art, reading those terms within the patent documents in their entirety. Thank you, Mr. Miller. You'll have your rebuttal time. Mr. Krause? What do you have to say about the claim construction? Well, the Board did exactly what Mr. Miller suggests that they did not do. That is, they did construe the claims with regard to the patent application in its entirety. And looking into the patent application, they found a place where the applicant clearly defined the term texture. Where would that be? That's on page 817 of one of the applications. It reads identically in the other. I'm sorry, A817? Yes, Your Honor. Okay. And near the top of that page, it says a series of lines, 50, equally or unequally spaced, figures 3 and 4, or a plurality of shapes, e.g. ovals and circles and figures 5 and 6 respectively, or some other pattern, predetermined or randomly generated. The Board looked at this and said there's no limitation here on the size of the lines or on the shape of the lines. And then it properly turned to the prior art and saw the Widmer reference and looked at the ribs in that, which seemed to it to be a series of lines evenly or unequally spaced or, in any event, some other pattern, predetermined or randomly generated, and said this falls within the definition of texture as it appears in the patent application. And that is the normal process of claim construction. A person with skill in the art looks to see how the applicant used the term. That's what the Board did here, and that's what texture means for purposes of this patent application. Where would we see in the Board's opinion the precise articulation of the claim construction? They construe several claim terms right in a row, and near page A-16, I believe, is in one of the opinions. Right here they explain towards the top, appellants disclose the texture, and then the part that I quoted from A-8-17. And then they go on. We don't have to look at extrinsic evidence because the appellant's specification clearly defines textured. And then it goes on in the prior section of the brief to use that definition and apply it to Widmer, as I've mentioned. Thank you. So I think that's dispositive of the question of whether there is a texture in the Widmer reference. The other claim construction issue that Mr. Miller raises is the Board's use of a dictionary definition to define the word impart for purposes of the process claim, which is simply imparting a texture to a hearing instrument shell. That term, unlike texture, is nowhere defined in the specification. So the Board properly looked to a dictionary to define that term and found a definition that said to give or to grant or give rise to by contact, association, or influence, checked that definition consistent with the Phillips case against the specification, found that that definition was consistent with all the usages in the specification, and then looked to the prior art cited by the examiner and found that, first, Widmer certainly applies because the Widmer reference imparted a texture by means of the very laser-centering reference that discussed in the specification of the applicant. And then second, looked to those two other references, Yost and Perkins, and found that although the texture there may have been applied at a different part of the process, maybe it wasn't integral to the hearing instrument in those cases, both of those prior references clearly imparted by that definition of impart a texture to a hearing aid shell. So that covers both of those definitions. Those are the two claim construction issues. Was it proper to use a dictionary in determining a definition of imparting? Because they did use the term imparting in the application itself. Yes, they did, and the context in which they used it is important for construing the term, but at the end we need some reference to decide what the scope of that term is. We can't simply look at every place they used it, usually in discussing a preferred embodiment, and say now we know what imparted means. There is a general definition of impart, as the board found, which is consistent with all those usages. Just in common meaning. In common meaning, yes. That's precisely right. In fact, in the specification itself, it gives support to the board's use. In one place, cited in our brief, it equates the word impart with the word created. That's on page A425, and on page A430 in the specification. The board uses the examples of textures imparted to the surface. Perhaps this is on A18, and imparting a pattern to the surface of layers. And then the appellants also used the word creating synonymously with imparting. But then they went forward and pointed out that the extrinsic evidence of a dictionary definition wherein impart means to give a grant, give rise to. So they went ahead and determined from a dictionary as to what it meant. Is that consistent with Phillips? I believe it is, Your Honor, in that there is no place in the specification of where the term impart is defined. There's no suggestion that it be limited to the particular methods disclosed by the applicant. In fact, the applicant says this texture can be imparted in any number of ways, not even specified. So I think under those circumstances, it's appropriate to look at a general definition of dictionary in a dictionary. And part of the problem is here in the Patent Office, we apply the broadest reasonable interpretation of a term. So it's dangerous, especially at our level, to read limitations from the specification into the claims because that can result in a narrower, I'm sorry, a broader claim issuing, which in some cases may, in an infringement litigation, be read to literally encompass the prior art. Here, if we issued a claim that said imparting a texture to a hearing aid shell, it's not completely clear that people practicing the Perkins or the Yoast application would escape infringement. And that's why we encourage applicants to amend their claims to specify, and there are ways of specifying that the idea was to modify the surface. Then that still would not have escaped the Widmer II reference, which specifically does modify the surface. But that's the answers. I have nothing further, unless the panel has anything for me. Thank you, Mr. Krauss. Mr. Miller, you have your full rebuttal time, plus I think a little additional that you didn't use. So you have six minutes, 50 seconds. Thank you, Your Honor. The Patent Office's construction and the part of the brief, part of the board decision, excuse me, and our application, where it does talk about a series of lines and what have you, does not address the entire construction of texture that the board found. And I only gave you for one opinion, but on A17, lines 3 to 5, you have for the method case. And again, on A37, down near the bottom, the broadest reasonable interpretation of texture includes smooth and non-smooth. So that doesn't address the clamp construction as a whole. And as it stands now, when we go back to the Patent Office, that's the construction we confront, not the limited construction that might include the lines and what have you. It's smooth and non-smooth. Really, as we see it, it doesn't matter what's on that surface. Virtually anything would anticipate. As to the term imparting, Phillip's case and many other cases, I believe Vitronics, which was cited by the Patent Office, talks about an implied meaning. It can be implied. And based on reading the patent applications in their entirety, one would see, one skill in the art to whom these documents are directed would understand what it means. And we submit that the Patent Office went beyond that. And there was no need to go that far. And it's imparting a texture, not just imparting by itself, but as the cases say. Excuse me. Yes, Your Honor. Your definition of imparting is modifying the surface of the hearing instrument shell. Yes, Your Honor. How does that make much difference to the dictionary definition? Because we're not adding anything. There's no teaching in the specification of either patent of adding something on top of the shell. The shell is designed to fit more or less securely within the ear canal and not add something on top of it. And you think the definition give rise to or by contact associates or influence means to add to? Yes, Your Honor. Yes, Your Honor. At least to some extent. Again, as I stated, we have not amended the claims. We're fully prepared to amend the claims. But under the two-step procedure, first properly construe the claims so we understand where the boundaries of the invention are. And then, as need be, we would amend the claims. To amend the claims prior to get to the construction, we run the risk, a great risk, of forfeiting patentable subject matter area. Finally, the teaching in Phillips about reading the terms in the context of specification is not inconsistent with the broadest reasonable meaning. Because broadest reasonable interpretation has to be consistent with the specification. And as Courtright, which we cited throughout the record, also has to be one that someone skilled in the art would reach. If you have any further questions, I'd be happy to answer. No, I think we're all set. Thank you, Mr. Miller. Ms. Krause, thank you. The case is submitted.